**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

FILED & ENTERED

JAN 25 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams DEPUTY CLERK

| | |
|---|---|
| In re:<br><br>Palomba Weingarten<br><br>                                        Debtor(s).<br><br>Pointe San Diego Residential C<br><br>                                        Plaintiff(s),<br>v.<br><br>Palomba Weingarten, ROBERT WEINGARTEN<br><br>                                        Defendant(s). | Case No.: 1:04-bk-16437-GM<br><br>Adv No: 1:05-ap-01091-GM<br><br>Chapter 7<br><br>**MEMORANDUM OF OPINION REGARDING DEFENDANT'S RENEWED MOTION FOR JUDGMENT ON PARTIAL FINDINGS AS TO PLAINTIFF'S RIGHT TO RELIEF UNDER 11 U.S.C. §727(a)(3)**<br><br>Date: February 4, 2011<br>Time: 10:00 a.m.<br>Courtroom: 303 |

After years of litigation in state court, which is still ongoing at this time, Palomba Weingarten ("Weingarten"), the defendant in those cases, filed for relief under chapter 11 of the Bankruptcy Code. According to her schedules, she only had seven creditors, all of whom were unsecured and most of which were for judgments.[1] On motion of the Pointe San Diego Residential Community, LP, et al ("the Gosnell parties"), which was the largest creditor group, this Court appointed David Gottlieb as examiner. Gottlieb took charge of the papers that Weingarten turned over to him. After an extensive and thorough examination of those documents and other information provided by Weingarten and her husband, Gottlieb filed his Examiner's Report.[2] At some point thereafter this case was converted to chapter 7.

---

[1] Astra Management Corporation; Azoff Family Trust; BR Family Partners, LP; Deloitte & Touche; Gosnell/Pointe San Diego entities; Lee Midtun; and Wenner & Associates. Although more names were listed in Schedule F, the balance were for notice only or were related to or professionals for these seven creditors.

[2] Case 1:04-16437 GM (hereinafter "bankruptcy case"), doc. #269.

-1-

The Gosnell parties and B.R. Family Partners, L.P., et al ("the Rogers parties") each filed a complaint under 11 U.S.C. § 727, seeking to block Weingarten's discharge. The Plaintiffs worked in tandem and the Court kept the complaints together throughout the pretrial and initial trial process.

As the trial progressed, it became clear that the testimony of the Examiner was critical evidence on several of these claims. The Plaintiffs requested that the Court take judicial notice of the Examiner's Report on Financial Matters for that purpose, but the Court ruled that the report did not provide admissible evidence in that it was not under penalty of perjury and that it did not show that Gottlieb had actual personal knowledge of the facts stated.[3]

On September 23, 2010, after the Plaintiffs had presented their case in chief, the Defendant moved for judgment on partial findings concerning claims under 11 U.S.C. §§ 727(a)(2), (a)(3), and (a)(5). The Plaintiffs requested to reopen their case in order to introduce testimony from David Gottlieb. The Court granted the motion over Weingarten's objection and ordered that the Gottlieb direct testimony be by declaration, which was to be filed no later than November 1, 2010. Weingarten was to be able to cross-examine Gottlieb on November 19, 2010.[4]

The Gottlieb declaration was not timely filed. On November 19, 2010 the Court denied Weingarten's motion to strike conditioned on Plaintiffs reimbursing Weingarten for her actual reasonable costs in connection with the motion to strike.[5] After reviewing various declarations and briefs filed by the parties, on December 29, 2010 the Court ordered that counsel for Plaintiffs were to pay $5,955 to counsel for Weingarten as a

---

[3] Adversary Proceeding 1:05-0109 GM (hereinafter "Gosnell adversary"), doc. #52.
[4] Hearing Transcript of October 1, 2010: Gosnell adversary doc. #36.
[5] Hearing Transcript of November 19, 2010: Gosnell adversary doc. #51.

-2-

condition to the denial of the motion to strike the Gottlieb declaration.[6]  This was to be paid within fourteen days after entry of the order.  Plaintiffs chose not to pay it and the declaration of David Gottlieb has been stricken.[7]

Thus the Gottlieb testimony is not part of the record of admissible evidence.

The original motion for judgment on partial findings was filed on September 23, 2010 at the close of Plaintiffs' case. But on September 28, 2010, the Plaintiffs filed a motion to amend their complaints to add claims under §§ 727(a)(2)(B) and (a)(6). Weingarten opposed and the Court denied the motion in that the claims were time-barred.[8]

Thus, the only remaining claims fall under §§ 727(a)(2), (a)(3), (a)(4), and (a)(5). Section 727(a)(4) was bifurcated and excluded from the initial part of the trial.   The motion for judgment on partial findings was deferred due to the Plaintiffs' motion to reopen their case in chief and examine Mr. Gottlieb.  But as soon as the November 1 deadline had passed without the filed Gottlieb declaration, Weingarten filed her renewed motion for partial judgment.[9]  Oral argument took place on February 4, 2011.  At that time the Court denied the Defendant's motion for judgment on partial findings under § 727(a)(2) and § 727(a)(5), but deferred ruling as to § 727(a)(3) until the issue of the Examiner's testimony would be resolved.[10]  On February 7, 2011 the Defendant filed a Motion to Reconsider the denial, but only as to § 727(a)(2), which is being resolved in a separate memorandum and order.[11]  This memorandum solely deals with the motion for

---

[6] Gosnell adversary, doc. #54.
[7] Gosnell adversary, doc. #87.
[8] There is no written order on the docket other than the tentative ruling, which was orally adopted by the Court. Adv. 1:05-1009 GM (hereinafter "Rogers adversary"), doc. #92; transcript of 11/19/10 hearing pp. 17-18, Gosnell adversary, doc. #51.
[9] Gosnell adversary, doc. #33.
[10] Transcript, Feb. 4, 2011,  26:1-5.
[11] Gosnell adversary, doc. #64.

partial judgment as to § 727(a)(3).

11 U.S.C. § 727(a)(3) states that the court will deny discharge if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained unless such act or failure to act was justified under all of the circumstances of the case.

The burden is on the Plaintiff to show that the Debtor failed to keep or preserve the material OR destroyed, mutilated, concealed or falsified information AND that this failure or act renders it impossible to ascertain the financial condition and material business transactions of the Debtor.[12] The Debtor need not justify the status of her books and records until the Plaintiff has shown that the records do not exist, etc. and that because of this the financial condition of the Debtor cannot be ascertained. Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008).

Caneva has some similarity to the facts of this case and sets forth the standards and burdens in the Ninth Circuit. Caneva revealed an interest in about fifteen business entities, stating that the extent was unknown. He admitted that he kept no financial records for any of these entities although they were either operating businesses or were holding companies for operating businesses. Debtor also had paid a $500,000 brokerage fee for a loan that he stated that he did not receive, though he admitted that he had no documentation to support this.

Citing to its previous decisions on §727(a)(3), the Ninth Circuit reiterated that

---

[12] Fed. R. Bankr. P. 4005. The standard of impossibility is set forth in Colliers. Colliers on Bankruptcy 16th ed, ¶ 727.03[4]. But "impossibility" is not the language of the statute and although Colliers gives no support for it, it appears to come from Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3d Cir. 1992). Meridian, citing to an earlier opinion, restates the requirement of impossibility, but applies a lesser standard in the Meridian case itself when it holds that the Defendants "failed to maintain adequate financial records, making candid disclosure difficult if not impossible." Id. at 1234.

> the purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs. Cox, 41 F.3d at 1296 (citation omitted). The disclosure requirement removes the risk to creditors of "the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records." Burchett v. Myers, 202 F.2d 920, 926 (9th Cir. 1953). The statute does not require absolute completeness in making or keeping records. Rhoades v. Wikle, 453 F.2d 51, 53 (9th Cir. 1971). Rather, the debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." Id. This exception to dischargeability, however, "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." Industrie Aeronautiche v. Kasler (Matter of Kasler), 611 F.2d 308, 310 (9th Cir. 1979) (citation omitted).

Caneva, 550 F.3d at 761.

In this passage, the Court of Appeals seemed to hold that the written documentation must be sufficient for creditors to *reasonably* ascertain the debtor's financial condition and business dealings, but the Caneva decision ultimately applied Meridian Bank's requirement of *impossibility*:

> A creditor states a prima facie case under § 727(a)(3) by showing '(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.' Cox, 41 F.3d at 1296 (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3d Cir. 1992)).

Caneva, 550 F.3d at 761

Caneva admitted that he did not keep records for his business entities or regarding the brokerage fee, but said that he turned over a substantial quantity of documents to the Trustee and that these should have been sufficient to determine his financial condition and business affairs or that the records could have been ascertained from other sources by the Plaintiff.[13]  The Ninth Circuit disagreed, following the Seventh Circuit holding that § 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." Caneva, 550 F.3d at 762 (quoting Peterson v. Scott (In re Scott), 172 F.3d 959, 969 (7th Cir. 1999), which in turn

---

[13] Because Caneva was in the context of a motion for summary judgment, the issue was whether there is a triable issue of fact, not whether the Plaintiff put on a prima facie case.

-5-

cited In re Juzwiak, 89 F.3d 424, 429 (7th Cir. 1996)). The Ninth Circuit also agreed with Peterson that "when a debtor is sophisticated and carries on a business involving substantial assets, 'creditors have an expectation of greater and better record keeping.' Id. (again citing Peterson, 172 F.3d at 970, which cited Juzwiak, 89 F.3d at 428).

Thus, although Caneva produced a large quantity of records, the crucial issue was the total absence of records as to his business entities and the asserted $500,000 payment. Because of that lack of records, the court found that it would be impossible for the Plaintiff to accurately determine the Debtor's financial condition and business transactions and held that

> when a debtor owns and controls numerous business entities and engages in substantial financial transactions, the complete absence of recorded information related to those entities and transactions establishes a prima facie violation of 11 U.S.C. § 727(a)(3). Likewise, we hold that when a debtor transfers a substantial amount of money to a third party, the failure to keep any documentation evidencing the terms of the transfer or the fact that the payment actually took place establishes a prima facie violation of 11 U.S.C. § 727(a)(3).

Id. The Weingarten case is distinguishable from Caneva in that Weingarten testified that the records existed and that she turned them over to the Examiner, who later turned them over to the Trustee.

The other opinion in the Ninth Circuit with somewhat similar facts is Olympic Coast Inv. v. Wright (In re Wright), 364 B.R. 51, 69 (Bankr. D. Mont. 2007), aff'd, 2008 U.S. Dist. LEXIS 3347 (D. Mont. Jan. 15, 2008), aff'd, 340 Fed. Appx. 422 (9th Cir. 2009), concerning records of the transfer of Debtors' insurance business and fourteen real estate transactions. Debtors turned over fifteen file cabinets of documents and the creditor's counsel went through them for a day and a half. At the § 727(a)(3) trial the Plaintiff offered no qualified expert accountant or any other witness to testify as to what was in the records that were turned over or what sort of records should be in the Debtors' files given the nature of the Debtors' business transactions. Unlike Caneva in

which the Debtor testified that he had no records, in <u>Wright</u> the Debtors testified that they kept everything and allowed the Plaintiff access for review.  Plaintiff proffered no testimony that it completed that review or what it found.

> Based upon the Debtors' voluminous business records, and OCI's failure to offer testimony by expert witnesses as was offered in <u>Juzwiak</u>, the Court concludes that OCI failed to satisfy the first <u>Cox</u> requirement that the Debtors failed to maintain and preserve adequate business records. Given that failure it is not necessary to consider the second <u>Cox</u> factor -- whether such failure makes it impossible to ascertain the Debtors' financial condition and material business transactions, and the burden of proof does not shift to the Wrights to justify the inadequacy or nonexistence of the records. <u>Cox</u>, 41 F.3d at 1296.

<u>Wright</u>, 364 B.R. at 70.

<u>Strzesynski v. Devaul (In re Devaul)</u>, 318 B.R. 824, 830-34 (Bankr. N.D. Ohio 2004), <u>reconsid. denied</u>, 2004 Bankr. LEXIS 2127 (Bankr. N.D. Ohio Nov. 24, 2004), sets forth an excellent analysis of the division of responsibility between the Plaintiff who wishes to deny the Debtor a discharge under § 727(a)(3) and the Debtor who seeks a discharge.  This arises from the requirements of § 521(a)(4) that the Debtor must "surrender to the trustee all property of the estate and any recorded information including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title."  But for purposes of § 727(a)(3), the § 521 requirement does not shift the burden to the Debtor to show that this has been done.

> <u>Devaul</u> sets the following as the standard for the Plaintiff to meet its requirements under § 727(a)(3):
>
> Accordingly, to meet the initial burden under § 727(a)(3), the creditor must first offer evidence of the general nature of Debtor's business or personal financial position (e.g. consumer, business relationships and interests, general nature of business interests and sources of income) and the types of transactions about which recorded information is sought. . . .
>
> Second, the plaintiff must present evidence identifying for the court, on summary judgment or at trial, what recorded information it alleges has been concealed, destroyed, mutilated, falsified, or not kept or preserved by a debtor. . . .

> Third, the plaintiff must show how the missing recorded information "might" enable a particular debtor's actual financial condition or business transactions to be ascertained under the circumstances of the case, which is the ultimate connection between the first two elements of proof. See Grange Mutual Ins. Co. v. Benningfield (In re Benningfield), 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989)("The requirement in § 727(a)(3)…includes as a necessary assumption, that any records which have not been kept have possible material relevance to his financial condition."). In some cases, this may require opinion testimony by lay witnesses, Fed. R. Evid. 701, or qualified expert witnesses, Fed. R. Evid. 702. In others, the simplicity of the debtor's circumstances and the nature of the missing recorded information may be so basic as to allow the court to otherwise draw the conclusion on its own that the missing records are inherently such that one "might" be able to ascertain a debtor's financial condition or business transactions from them.

Id. at 833-4.

The evidence in the Weingarten case relies strictly on Weingarten's own testimony. The Examiner's Report was not admitted into evidence and the Examiner was not allowed to testify. Thus there is no expert or percipient witness testimony as to what documents were available to the Examiner, Trustee, or creditors or what sort of records should be in Weingarten's files given the nature of her business.

The Evidence

Plaintiff's contentions:

Plaintiff relies on six groups of evidence in support of its prima facie case.[14] [Court comments are in italics.]

(1) Debtor is financially sophisticated. This is not in dispute. Debtor has a substantial background in owning, managing, and running businesses, was a Wall Street broker, worked for banks and brokerage firms, etc.

(2) Debtor was a party to evasive correspondence with the Examiner. Exhibit 22 and the testimony surrounding it cover seven categories of documents that the

---

[14] Gosnell adversary, doc. #98, pp. 18-26.

Examiner requested be produced.[15] These are set forth on the following table:

| REQUEST FROM EXAMINER | RESPONSE BY WEINGARTEN THROUGH HER ATTORNEY | COURT COMMENTS |
|---|---|---|
| Personal Financial Statements for 1996, 1997, 2001, 2003 | Debtor does not have or cannot locate these. However she has produced her tax returns and those of 1996, 1997, 1998, 2001, and 2003 should provide the needed information. | *It appears that she had produced them for at least 1998, 1999, 2000, and 2002. It should be noted that 1996 was eight years before the bankruptcy case was filed.* |
| General ledgers and journals for WWI, Atlas Homes, Atlas Holdings, Astra Management and Atlas Millenium Golf for various years (some prior to 2003, some prior to 2002, some prior to 1998 since the others have been produced) | Some have been produced, as have lots of bank and disbursement records. She has produced all of the general ledgers that she can locate. Many of the general ledgers are exhibits to the "Ann Wilson report," which the Examiner has. | *There is no evidence as to exactly what is missing and whether the missing ones keep the Trustee from reasonably ascertaining her financial condition within a reasonable period of time before bankruptcy (using the standard most favorable to the Plaintiff)* |
| General ledgers for Hidden Canyon Ranch from 1996 to present | There are no existing general ledgers and all information is in the tax returns, which have been produced. | *There is no evidence that the lack of these documents interfered with the Trustee ascertaining her financial condition* |
| Audited or unaudited financial statements for Atlas Holdings for 2004 | This is being produced to the Examiner by Rita Villa. | *There is no evidence that this was not actually produced* |
| Audited or unaudited financial statements for Atlas Millenium Golf for 2003 and 2004 | Atlas Millenium Golf was not in existence after 2001-2002 | *Examiner states in the letter that he has these financials for 1998 to 2002.* |
| Documents as to Atlas Millenium Ori Bags | There was never such an entity. Weingarten sought to obtain this corporate name, but never did obtain it. | |

---

[15] Exhibit 22 and testimony 9/21/10, 105:20-108:23.

| REQUEST FROM EXAMINER | RESPONSE BY WEINGARTEN THROUGH HER ATTORNEY | COURT COMMENTS |
|---|---|---|
| General ledgers, tax returns, etc. of Excelsior. | Excelsior is a trust and Debtor's investment in Excelsior is reflected in the Morgan Stanley account statements that have been produced as well as Debtor's operating statements at the OUST. Excelsior does not have any checks or disbursements. Jonathan Lurie has already provided the Examiner with documents concerning Excelsior. | *Examiner states that Excelsior was formed in late 2002 or early 2003. Examiner is aware of the Morgan Stanley account and requests to know when it was opened.* |

3. <u>Debtor failed to identify Astra Fund Distributors Corp.</u> Plaintiff asserts that this was not listed in Debtor's response to the Examiner's questions (Ex. 22) although Weingarten had control over it.[16]  *However, Exhibit 22 did not ask her to list all entities over which she had control, but to provide documents for all such entities. The only entity that she specifically discussed in her response was Atlas Homes, LLC. As to all others (as a group and without specific identification), her attorney merely said that "Ms. Weingarten has produced, concerning the non-debtor entities, a vast amount of bank records and disbursement records evidencing receipts and disbursements."*

4. <u>Debtor failed to keep records of Veritas.</u>  Still referring to Exhibit 22, Plaintiff points out that when the Examiner asked for clarification of the Debtor's precise interest in Veritas and "any documents/evidence as to the value of this interest (ie. fair market value of assets and liabilities)," the Debtor's counsel responded that "Veritas is in liquidation and does not have any documents. Ms. Weingarten is a minority shareholder in Veritas."

And when the Examiner also asked for other financial records and tax returns of

---

[16] Transcript, 9/21/10, 120:10-25.

Veritas, Weingarten's counsel responded that "Ms. Weingarten does not have any documents concerning Veritas." And it should be noted that during her testimony at trial, Weingarten said that her husband ran Veritas and that she never asked him for any documents in response to the Examiner's request.[17]

*There is no evidence that a minority shareholder would have records or that these could not be obtained from Robert Weingarten since both he and the Debtor were allowing the Examiner to have access to records that he had.*

5. <u>Debtor failed to produce the Hidden Canyon tax returns.</u> Referring to Exhibit 26, Weingarten's attorney responded to the Examiner's request for the Hidden Canyon tax returns that "Ms. Weingarten presently cannot locate the 2000 and 2001 tax returns, but has instructed Deloitte & Touche to locate these tax returns and deliver them to you." *Again, there is no evidence that Deloitte & Touche did not turn them over. It appears that if a Debtor uses an accountant, particularly such a well-known one as Deloitte & Touche, that this is sufficient since they should have copies of their work. Further, tax returns can be obtained directly from the IRS and there is no showing that the Debtor did not or would not have signed the necessary request for this purpose.*

6. <u>Debtor claims to have lost the Atlas Holdings Group stock book.</u> At the trial, at first the Debtor testified that she had later found and turned over the stock book to the Examiner or Trustee. But after looking for it, she stated that she could not locate it and did not know whether she had, in fact, turned it over or whether it was lost.[18]

<u>Defendant's Response</u>

Debtor turned over a vast amount of documents and gave unfettered access to

---

[17] Transcript, 9/21/10, 35:5-36:14.
[18] Transcript, 9/21/10, 138:1-139:19; 9/23. 13:5-14:25.

-11-

the Examiner and the Trustee. Her husband, not a party to this bankruptcy case, also produced documents. There is no testimony to contradict that as of August 31, 2005, Ms. Weingarten had personally produced and delivered to the Examiner at least 35,925 pages of documents and that the Examiner also obtained documents from Deloitte & Touché, Robert Weingarten, and Jonathan Lurie. There were additional documents that the Examiner's accountants inspected in Debtor's counsel's office, and that the Examiner had been given access to the documents in the Iron Mountain storage facility.[19] Ms. Weingarten testified that there were at least 120 boxes of documents at Iron Mountain and that she gave the Examiner access to those along with an index.[20]

As to the Atlas Holdings ledgers, Weingarten admits that they exist, but asserts that she cannot locate them at this time.

Analysis

As noted above, the burden is on the Plaintiff to show both that the debtor failed to maintain and preserve adequate records and that such failure made it impossible to ascertain debtor's financial condition and material transactions. Establishing inadequacy of the records will turn on evidence of what information has and has not been turned over as well as evidence of what information should be in debtor's files given her business

Plaintiff attempts to use my Memorandum of Opinion ordering appointment of a Trustee to support its case that Debtor failed to turnover records or did not keep them in a business-like fashion and thus there is an incomplete paper trail to let the examiner

---

[19] Exhibit 26.
[20] Transcript, 9/21/10, 108:16-23.

-12-

trace where all the money went.[21]  That Memorandum and findings were based solely on the Examiner's report, which has not been admitted as evidence in this adversary proceeding.  Thus, the conclusions cannot be used to shore up the Plaintiff's case in chief.

. Because the Examiner's report and testimony are not before the Court, all that I have as to what information has been provided is evidence that some 35,000 pages were turned over, that records were made available from other sources, and that there were an additional 120 boxes to which the Examiner was given access (along with an index as to those boxes).  Other than the May 31, 2005 letter from Weingarten's counsel, there is no evidence that documents do not exist or that they exist and were not turned over.[22]  And even in that letter, it appears that all tax returns were made available, along with most financial statements, ledgers, etc.  There is no evidence that the remaining general ledgers were not produced and it is clear that the more recent ones were, since the Examiner did not ask for them.

In fact, the missing documents seem to be a very small part of those concerning Weingarten's total business dealings and Plaintiff has produced no evidence as to what documents should be kept by a debtor under the circumstances in which Ms. Weingarten did business, including what documents one would expect to exist as to each of the companies referred to in Exhibit 22.  There is no testimony that she must necessarily have prepared a personal financial statement every year or that it was unusual that an individual in her circumstances would only have them for four years out of an eight year period.

Finally, Plaintiff has presented no evidence that any failure of Weingarten to

---

[21] Gosnell adversary, doc. #98, p. 24-5 citing to trial exhibit 6, which is a copy of 1:04-bk-16437, doc. # 350.
[22] Exhibit 22.

maintain and preserve records made it impossible to ascertain Weingarten's true financial condition.

    Based on the above, I find that judgment on partial findings should be granted to the Defendant as to the claim for relief under 11 U.S.C. § 727(a)(3).

###

Date: January 25, 2013

_____
Geraldine Mund
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): _ **MEMORANDUM OF OPINION REGARDING DEFENDANT'S RENEWED MOTION FOR JUDGMENT ON PARTIAL FINDINGS AS TO PLAINTIFF'S RIGHT TO RELIEF UNDER 11 U.S.C. §727(a)(3)**
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Richard Berger: rberger@lgbfirm.com
Jeffrey Cawdrey jcawdrey@gordonrees.com
Joseph Eisenberg jae@jmbm.com
John Reitman jreitman@lgbfirm.com
George Schulman gschulmna@dgdk.com
John Tedford jtedford@dgdk.com
Richard Lee Wynne rwynne@kirkland.com
Aleksandra Zinonjic azimonjic@lgbfirm.com
Maurguax Ross margaux.ross@usdoj.gov
Thomas Geher tmg@jmbm.com
Michael Vivoli mvivoli@vivolilaw.com
David Gill dagill@dgdk.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*　　　　　　　　　　　　　　　　　　　　　　　**F 9021-1.1.NOTICE.ENTERED.ORDER**