# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

FILED & ENTERED

JAN 25 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams  DEPUTY CLERK

| | |
|---|---|
| In re:<br><br>Palomba Weingarten<br><br> Debtor(s). <hr><br>Pointe San Diego Residential C<br><br> Plaintiff(s), <br>v.<br><br>Palomba Weingarten, ROBERT WEINGARTEN<br><br> Defendant(s). <hr> | Case No.:  1:04-bk-16437-GM<br><br>Adv No:    1:05-ap-01091-GM<br><br>Chapter 7<br><br>**MEMORANDUM OF OPINION REGARDING DEFENDANT'S MOTION TO RECONSIDER THE DENIAL OF THE MOTION FOR JUDGMENT ON PARTIAL FINDINGS AS TO 11 U.S.C. §727(a)(2)**<br><br>Original Hearing Date<br>Date: March 9, 2011<br>Time: 10:30 a.m.<br>Courtroom: 303 |

After years of litigation in state court, which is still ongoing at this time, Palomba Weingarten ("Weingarten"), the defendant in those cases, filed for relief under chapter 11 of the bankruptcy code.  According to her schedules, she only had seven creditors, all of whom were unsecured and most of which were for judgments.[1]  On motion of the Pointe San Diego Residential Community, LP, et al ("the Gosnell parties"), which was the largest creditor group, this Court appointed David Gottlieb as examiner.  Gottlieb took charge of the papers which Weingarten turned over to him.  After an extensive and thorough examination of those documents and other information provided by Weingarten and her husband, Gottlieb filed his examiner's report.[2]  At some point thereafter this case was converted to chapter 7.

---

[1] Astra Management Corporation; Azoff Family Trust; BR Family Partners, LP; Deloitte & Touche; Gosnell/Pointe San Diego entities; Lee Midtun; and Wenner & Associates. Although more names were listed in Schedule F, the balance were for notice only or were related or professionals for these seven creditors.
[2] Case 1:04-16437 GM (hereinafter "bankruptcy case"), doc. #269.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Gosnell parties and B.R. Family Partners, L.P., et al ("the Rogers parties) each filed a complaint under 11 U.S.C. section 727, seeking to block Weingarten's discharge.  The Plaintiffs worked in tandem and the Court kept the complaints together throughout the pretrial and initial trial process.[3]

Trial began on September 20, 2010 and as the trial progressed, it became clear that the testimony of the Examiner was critical evidence on several of these claims. The Plaintiffs requested that the Court take judicial notice of the Examiner's Report on Financial Matters for that purpose, but the Court ruled that it did not provide admissible evidence in that it was not under penalty of perjury and that it did not show that Gottlieb had actual personal knowledge of the facts stated.[4]

On September 23, 2010, after the Plaintiffs had presented their case in chief, the Defendant moved for judgment on partial findings concerning claims under 11 U.S.C. § § 727(a)(2)(A), (a)(3), and (a)(5).  Except for one under § 727(a)(4), which had been bifurcated and was not part of the initial trial, these were the only claims in the complaints.  The Plaintiffs requested to reopen their case in order to introduce testimony from David Gottlieb.  The Court granted the motion over Weingarten's objection and ordered that the Gottlieb direct testimony be by declaration, which was to be filed no later than November 1, 2010.  Weingarten was to be able to cross-examine Gottlieb on November 19, 2010.[5]

The Gottlieb declaration was not timely filed and on November 19, 2010 the Court denied Weingarten's motion to strike conditioned on Plaintiffs reimbursing

---

[3] The Rogers parties settled in early 2012 and their complaint was dismissed.   Because they acted in tandem up to that time and most papers were filed with the captions of both adversary proceedings, this Memorandum interchangeably uses the singular and plural verbs and the term Plaintiffs and Plaintiff.  No distinction is intended by these variations.
[4] Adversary Proceeding 1:05-0109 GM (hereinafter "Gosnell adversary), doc. #52.
[5] Hearing Transcript of October 1, 2010: Gosnell adversary doc. #36.

-2-

Weingarten for her actual reasonable costs in connection with the motion to strike.[6]

After reviewing various declarations and briefs filed by the parties, on December 29,

2010 the Court ordered that counsel for Plaintiffs was to pay $5,955 to counsel for

Weingarten as a condition to the denial of the motion to strike the Gottlieb declaration.[7]

This was to be paid within fourteen days after entry of the order.  Plaintiffs chose not to

pay it and the declaration of David Gottlieb has been stricken.[8]

       Thus the Gottlieb testimony is not part of the record of admissible evidence.

       The original motion for judgment on partial findings was filed on September 23,

2010 at the close of Plaintiffs' case. But on September 28, 2010, the Plaintiffs filed a

motion to amend their complaint to add claims under §§ 727(a)(2)(B) and (a)(6).

Weingarten opposed and the Court denied the motion in that the claims were time-

barred.[9]

       Thus, the only remaining claims fall under §§ 727(a)(2)(A), (a)(3), (a)(4), and

(a)(5).  Section 727(a)(4) was excluded from the trial.   The motion for judgment on

partial findings was deferred due to the Plaintiffs' motion to reopen their case in chief

and examine Mr. Gottlieb.  But as soon as the November 1 deadline had passed without

the filed Gottlieb declaration, Weingarten filed her renewed motion for partial

judgment.[10]  Oral argument took place on February 4, 2011.  At that time the Court

denied the Defendant's motion for judgment on partial findings under § 727(a)(2)(A) and

§ 727(a)(5), but deferred ruling as to § 727(a)(3) until the issue of the Examiner's

---

[6] Hearing Transcript of November 19, 2010: Gosnell adversary doc. #51.
[7] Gosnell adversary, doc. #54.
[8] Gosnell adversary, doc. #87.
[9] There is no written order on the docket other than the tentative ruling, which was orally adopted by the Court. Adv. 1:05-1009 GM (hereinafter "Rogers adversary"), doc. #92; transcript of 11/19/10 hearing pp. 17-18, Gosnell adversary, doc. #51.
[10] Gosnell adversary, doc. #33.

testimony would be resolved.[11]  On February 7, 2011 the Defendant filed this Motion to Reconsider the denial, but only as to § 727(a)(2).[12]

There have been numerous delays in determining this Motion to Reconsider – some at the request of the parties, some for the Court's own convenience, and some in the hope that the mediation process would resolve these disputes as well as the state court action.  Unfortunately mediation was not successful as to the Gosnell parties, though there has been a settlement with the Rogers parties.

Beyond that there has been a lack of urgency because of the ongoing state court litigation with the Gosnell parties and the settlement with the Rogers parties (whose adversary proceeding has been dismissed.)[13]  The only major non-administrative creditor remaining in this case is the Gosnell parties and until there is a final determination in the various state court matters, that claim has not been fixed and it may be possible that there is no claim at all.  Further there is ongoing litigation between the Trustee and Weingarten and her husband as to what assets are property of the estate.

Since the determination of this motion is not really dispositive of this case and will not expedite this bankruptcy to conclusion, delays for convenience to the Court have not been a problem.  But now the time has come when the Court is able to rule on this motion.

The Motion for Reconsideration asserts that the Court misperceived the facts and misunderstood the law -- particularly the applicability of Fed. R. Bank. P. 4004(a) -- and that when the correct law is applied to the true facts, the motion must be granted as to

---

[11] Because this is a motion to reconsider a prior ruling and there is no prior ruling on the motion for partial judgment as to §727(a)(3), that will be dealt with by separate order.
[12] Gosnell adversary, doc. #64.
[13] Rogers adversary, doc. #143.

the claims under § 727(a)(2).

This motion applies only to § 727(a)(2)(A) and attempts to limit the Court to the particular facts set forth in the complaint in its consideration of the evidence. Specifically the Defendant asks the Court to only look at (1) the transfer of the Malibu residence to a QPRT trust and (2) the assignment in December 2003 of twelve promissory notes to Atlas Holdings, an entity related to Weingarten. The Defendant wishes the Court to ignore any other issues raised in the Plaintiff's case in chief. Among these are the following assertions by the Plaintiff: Weingarten put inaccurate information in her schedules, which were never amended, in that she failed to list the Vestra bank account and the Astra bank account; she undervalued art, jewelry and antiques; she misrepresented the status of Excelsior; she failed to disclose her interest in Hidden Canyon; she did not list her interest in Wargundy; and she did not include her interest in Colony Capital. There is also the issue of whether she failed to provide information about the assets of each of the Atlas Holding companies. Further, there is a contention that she listed the value of Veritas and of the QPRT as "unknown," although these were known to her at the time. These are referred to in this motion as "unpleaded claims."

Although the motion identifies this list as the "unpleaded claims," it is both too broad and too narrow to cover the list provided in the Plaintiff's Summary of Evidence in Support of it "Prima Facie Case."[14] That document lists thirteen issues under §727(a)(2) and an additional six under §727(a)(3) and §727(a)(5). Because this motion is brought solely as to §727(a)(2), this memorandum is limited to the contentions raised under that section.

---

[14] Gosnell Adversary, doc. 98.

1   While a plaintiff cannot recover on a default judgment for any claims not pled in

2   the complaint, see, e.g., Farberware, Inc. v. Groben, 1995 U.S. Dist. LEXIS 15409

3   (S.D.N.Y. Sept. 15, 1995), this was not a default prove-up, but a trial.  Furthermore,

4   these are not unpled *claims*, but rather are unpled *evidence* in support of the

5   §727(a)(2)(A) claim pled in the complaint.  Defendant analogizes her motion to the

6   Plaintiff's motion to amend the complaint to add claims under § 727(a)(2)(B) and §

7   727(a)(6).   But the two are not really similar.  In the motion to amend, the Plaintiff

8   sought to add an entirely new theory of recovery, which was also based on new facts

9   that had not been included in the complaint, and consequently raised new claims.  In

10  distinction to this, the complaint asserted a claim under § 727(a)(2) and gave notice that

11  the Plaintiff would raise subsequently discovered fraudulent transfers and additional

12  grounds for denial of discharge.  Specifically, the Complaint states as follows:

> 24. Plaintiff is informed and believes and based thereon alleges that Debtor, among other transfers, assigned the promissory notes to Atlas Holdings, transferred her residence into a trust, and transferred other real and personal property she owned or had an interest in, all with the intent to hinder, delay, or defraud her creditors.  Plaintiff reserves the right to amend this Complaint to allege additional fraudulent transfers and grounds for denial of discharge, the scope and extent of which Plaintiff is presently ignorant because of Debtor's stonewalling and obstructionist conduct in connection with discovery in Pointe I and in the Superior Court action captioned Pointe San Diego Residential Community, LP, et al. v. Palomba Weingarten, San Diego Superior Court Case No. GIC 809277 ("Pointe II").

> 25. Based on the foregoing, the Debtor is not entitled to a discharge of her debts, as provided by 11 U.S.C. § 727(a)(2).

   Under the theory proposed by Defendant, the Plaintiff would have to constantly

   amend the complaint as discovery continued and new evidence arose which supported

   or undercut specific actions which had been taken by the Defendant.  This is not the law

   nor could it be – it would simply make the litigation process even more unwieldy than it

1   already is.

2       "The civil rules, as both the Supreme Court and this court have emphasized
3       repeatedly, establish a system of notice pleading." Shah v. Inter-Continental
        Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002) (citations
4       omitted). A plaintiff need not plead specific facts or legal theories, but must offer
        only a short and plain statement upon which relief may be granted. Id.; Fed. R.
5       Civ. P. 8(a); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12, 122 S.
        Ct. 992, 152 L. Ed. 2d 1 (2002) (holding that a plaintiff need not plead facts
6       sufficient to establish a prima facie case of race and age discrimination in order
        to survive a motion to dismiss). Under these circumstances, the court finds that
7       foreclosing any claims involving specific facts not pled in the complaint, which is
        effectively what the defendant advocates, would contravene the notice pleading
8       permitted in federal court. See generally, Bennett v. Schmidt, 153 F.3d 516, 518
        (7th Cir. 1998) (vacating district court dismissal of plaintiff's claim for race
9       discrimination in employment; stating "a complaint is not required to allege all, or
        any, of the facts logically entailed by the claim"), quoting American Nurses'Ass'n
10      v. State of Illinois, 783 F.2d 716, 727 (7th Cir. 1986).

11

12  Fulmore v. Home Depot, U.S.A., Inc., 2006 U.S. Dist. LEXIS 22909, 41-42 (S.D. Ind.

13  Mar. 30, 2006).

14      The motion cites cases holding that the 60-day time limit for filing §727

15  complaints as set forth in FRBP 4004(a) must be strictly enforced and argues that

16  Plaintiff's introduction of new transactions covered by §727(a)(2)(A) violates Rule
17

18  4004(a).  This argument ignores Ninth Circuit precedent allowing a late-filed formal

19  complaint governed by Rule 4004(a) to relate back to a "notice pleading" filed within the

20  60-day deadline.  Dominguez v. Miller (In re Miller), 51 F.3d 1502 (9th Cir. 1995)

21  accepted a "discharge memorandum" as a timely complaint, because it satisfied the

22  "notice pleading" standard of FRBP 7008 by giving debtor notice that plaintiffs "were
23

24  contesting his right to a discharge".  Id. at 1509.[15] The Ninth Circuit then allowed the

25  subsequent formal complaint (filed after FRBP 4004(a)'s 60-day time limit had expired)

26  to relate back and to add a new claim.  "We permit relation-back if the new claim arises

27  from the same 'conduct, transaction, or occurrence' [quoting FRCP 15(c)(1)(A)] as the

28  _____
[15] Dominguez was a chapter 11 case in which the Ninth Circuit also held §1141(d)(3) was not self executing for
individual debtors and that FRBP 4004(a) applied to §1141(d)(3) complaints.

original claim. We will find such a link when the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading." Id. at 150 (citations and quotations omitted).

The timely complaint in this case more than met the 9th Circuit's standard in Dominguez.  It gave the Defendant notice that Plaintiffs were contesting her right to discharge and even identified the relevant subsections of §727(a) that they were proceeding under.  Plaintiffs are not seeking to introduce new claims, merely new evidence.  But even if this new material was considered a *claim*, it would be proven by "the same kind of evidence" offered in the complaint (*i.e.*, transfers, removals, destruction, mutilation and/or concealment of property with intent to hinder, delay or defraud creditors) and thus can relate back to the complaint under Dominguez.

Given the level of discovery and pretrial motions, there is no surprise that evidence on these "unpleaded" issues was put forth.  There would have been no purpose in requiring that an amended complaint had to be filed.

In sum, Defendant's "new claim" argument both confuses claims with evidence and is fundamentally at odds with the notice pleading philosophy underpinning the Federal Rules of Civil Procedure as well as the status of this particular case.

The Defendant argues that because the Plaintiff did not prepare the Joint Pretrial Order it should be limited to the actions specifically identified in the complaint.  Not only is this not the law, but there is no harm to the Defendant.  Most of these issues and theories were raised in motions and oral argument as this case proceeded to trial and to the extent that she may need to prepare a defense on an unexpected issue it has been available due to the long hiatus in this trial.

The operative rule for a judgment on partial findings is FRCP 52(c), made

1   applicable to bankruptcy cases pursuant to FRBP 7052, which states:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).[16]

It is entirely discretionary whether the judge wishes to render judgment before the close of all evidence in the case. The judge can do this by denying the motion or reserving it until the end of the case. Wright & Miller, Federal Practice and Procedure, Civil 3d, Vol. 9C §2573.1.

In determining the motion, the judge is not to draw any special inferences in favor of the nonmoving party, but "may make findings in accordance with its own view of the evidence." Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006), cert. denied 549 U.S. 1211 (2007). There is some disagreement among courts as to whether the court must determine that the plaintiff has put on a prima facie case and, if so, what standard should be used in ruling on a Rule 52(c) motion. See Wright & Miller, Federal Practice and Procedure, Civil 3d, Vol. 9C §2573.1. However, it makes sense that the court must first analyze whether the plaintiff has presented a prima facie case, for failure to do so should end the adversary proceeding at that point. Stone v. Millstein, 804 F.2d 1434, 1437 (9th Cir. 1986). But once that minimal threshold has been met, the court may weigh the evidence and consider the witnesses' credibility. Chris Berg, Inc. v. Acme Mining Co., 893 F.2d 1235 (11th Cir. 1990). The court uses the test of preponderance of the evidence. Int'l Union of Operating Eng'rs v. Ind. Constr. Corp., 13 F.3d 253, 257 (7th Cir. 1994). Unlike a motion for summary judgment, which deals with

---

[16] This rule, added in 1991, replaced part of FRCP 41(b) and thus the case law under Rule 41(b) until 1991 is applicable under Rule 52(c).

the absence of contrary evidence, a motion for partial findings has the benefit of live

testimony and cross-examination.

   The Defendant presents this motion both as all-or-nothing (grant her judgment on

the entire § 727(a)(2)(A) cause of action) and as an issue-by-issue one (grant her

judgment on specific claims of wrong-doing).  The proper approach is to look at each

issue and see if judgment should be granted on that issue without the need for the

Defendant to put on any evidence.  If the Defendant prevails on all issues, the motion

will be granted.  Otherwise, evidence will be limited to those issues that remain.

   For Plaintiff to prevail, it must show that the Debtor transferred or concealed

property that belonged to her, in each case within one year before the date that the

petition was filed and with the intent to hinder, delay or defraud a creditor.  In re Aubrey,

111 B.R. 268, 273 (B.A.P. 9th Cir. 1990).

> Section 727's denial of discharge is construed liberally in favor of the debtor and
> strictly against those objecting to discharge. In re Devers, 759 F.2d 751, 754 (9th
> Cir. 1985). Accordingly, discharge of debts may be denied under section 727 (a)
> (2) (A) only upon a finding of actual intent to hinder, delay, or defraud creditors.
> Constructive fraudulent intent cannot be the basis for denial of a discharge. Id. at
> 753. However, intent "may be established by circumstantial evidence, or by
> inferences drawn from a course of conduct." Id. at 753-54.

First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342-1343 (9th Cir. 1986).

To infer the requisite intent, courts generally look at the pattern of alleged transfers and

concealment as a whole.

   There are only two asserted transfers – the Malibu Residence and the Atlas

Homes notes.  All other issues concern whether the Debtor concealed property either

by omitting it from her bankruptcy schedules and/or statement of financial affairs or by

undervaluing or misidentifying assets that were listed.

   The only witness in the Plaintiff's case-in-chief was Palomba Weingarten.

Therefore her credibility is a key to this motion.  Her testimony is often the only evidence before the court on these issues, in many cases both evidencing the existence of an asset in support of the Plaintiff's case and justifying why the asset was not disclosed in support of the defense.  Accordingly, Defendant's credibility is crucial to the disposition of this motion.   After listening to the Defendant's testimony, the court does have reservations about Defendant's credibility.  Furthermore, as a practical matter, her credibility is higher when she testifies against interest than when she does so in her defense.  Thus, the court will not grant this motion for those issues where the defense rests solely on Defendant's testimony.  It is up to the Defendant to present documentary evidence supporting her testimony on these issues.  Even if documents are not available to buttress her testimony for every transaction at issue, each transaction that is supported reinforces her credibility generally.

In determining this motion, I set forth each of the areas raised by the parties and my own comments and rulings, which are in italics.

## I. ASSET TRANSFERS DESCRIBED IN THE COMPLAINT

### (1) The Malibu Residence

Although the Plaintiff originally argued that this was not an issue to be determined at this time, it now agrees that Defendant's transfer of the Malibu residence to the QPERT took place more than one year before the bankruptcy was filed and thus the transfer did not need to be revealed and could not qualify as an issue under § 727(a)(2)(A).[17]  This issue will no longer be considered in this proceeding.

---

[17] Plaintiffs' "Prima Facie Case" Brief, Gosnell adversary, doc. #96-1, p. 14.

(2) <u>The Transfer of the Atlas Homes Notes to Atlas Holdings</u>

The other transfer in question is an assignment by Weingarten of twelve promissory notes payable to Weingarten and made by Atlas Homes in the total face amount of about $2 million. In December 2003 she assigned these to Atlas Holdings Group, an entity in which she held a 97 percent interest.[18]  The Plaintiff asserts that this transfer was without consideration and was with intent to hinder, delay, or defraud her creditors.  Plaintiff contends that two badges of fraud exist – the close relationship between the Defendant and Atlas Homes/Holdings and the lack of consideration for the transfer.   Defendant counters that there is no evidence that the transfer was to hinder, delay, or defraud her creditors; that the assignment was fully disclosed; that the promissory notes were worthless; and that she received fair consideration since Atlas Holdings wrote off her personal debt to Atlas Holdings in the amount of about $1.8 million and, in any event, that there was little diminution of value to creditors since Atlas Holdings was a positive net worth entity of which 97% was owned by Defendant..

The evidence is as follows:

It is undisputed that Weingarten owned 97% of Atlas Holdings.[19]  The strongest piece of evidence for inadequacy of consideration is a financial statement that Weingarten completed for Bank of America Private Bank as of April 30, 2004: in the "Accounts Receivable; Notes Receivable" section she lists "(Est.) $5 MM" due from "San Diego Properties."[20]  In the column headed "Collectible? Yes/No", Weingarten filled in "Yes*" for this asset.  The asterisked notation at the bottom of the page read: "Collectible under the terms of Operating Agreement governing cash flow distribution."

---

[18] Gosnell adversary, exhibit 4, p. 7 (Statement of financial Affairs, Q. 10 & Exh. 10).
[19] Gosnell adversary, exhibit 3, p.2, # 13.
[20] Gosnell adversary, exhibit 36, page 2, schedule 3.

1  Plaintiff asserts that this shows that the notes had value.

2      In opposition, Weingarten testified that the notes represented cash that

3  Weingarten had given to Atlas Homes to finish certain houses.  (Although she was the

4  managing director of Atlas Homes, she did not own any of its stock.)  With the

5  completion of the houses, Atlas Homes had no money to repay the notes.[21]   Even if

6  these notes had been collectible, Weingarten owed Atlas Holdings about $1.8 million

7  and Weingarten transferred the notes in exchange for the release of her obligation to

8  Atlas Holdings.[22]

9      As to the financial statement, she points out that the $5MM cannot refer to the

10  notes because at the time of the financial statement she no longer owned the notes:

11  they were assigned on December 31, 2003, four months before the financial statement

12  in question was prepared. Other discrepancies are that the schedule does not refer to

13  promissory notes, but to "San Diego Property."  It states that present value of the San

14  Diego Property is (est.) $5 million, which is far greater than the face value of the Atlas

15  Homes notes that were assigned.[23]  Further, the comment on exhibit 36 says that it is

16  "Collectable under the terms of the Operating Agreement governing cash flow

17  distribution."  If this did refer to the notes, it might have been an explanation of *how* the

18  notes were to be paid and not a statement that the obligor under the notes was able to

19  pay the notes.[24]

20      Weingarten also argues that there was no intent to hide this transaction which

21  was disclosed in the Statement of Financial Affairs and there was little harm to creditors

---

[21] Transcript, 9/21/10, 172:12-22.

[22] Transcript, 9/23/10, 9:7-10:4,  17:9-18:4

[23] Gosnell adversary, exhibit 4 at para. 10 and attachment 10 – face value of the assigned Altas Homes notes was $1,193,500.

[24] Defendant's Supplemental Brief in Support of Motion for Judgment on Partial Findings, Gosnell adversary, doc. 61, p. 6.

because the transfers were to a $8MM+ positive net worth company[25] that she owns 97% of, thus the net asset diminution would be only 3%

In response, Plaintiff argues that there was no promissory note from Atlas and questions whether there was a transfer at all.  In support of this, the Plaintiff notes that on bankruptcy Schedule B Weingarten did not state that she owed anything to Atlas Holdings, but rather she showed a receivable from Atlas Holdings.[26]  As to the earlier transfer date of the notes, Plaintiff asserts that just because Weingarten transferred the notes to her "alter ego" (Holdings), she still might have included them in the financial statement.

*Defendant has presented testimony rebutting the lack of consideration. Plaintiff's only evidentiary response is that there is no payable to Atlas Holdings on the schedules, but that receivable would have been eliminated as a part of the alleged transfer. Defendant's close relationship with Atlas Holdings alone is not sufficient to evidence intent to hinder, delay or defraud under §727(a)(2).   Given the court's reservations about Defendant's credibility the motion is not granted on this issue, and the Defendant should present evidence to support her testimony.*

## II. ASSET CONCEALMENT NOT DESCRIBED IN THE COMPLAINT

These all fall into Defendant's category of "unpleaded claims."   As discussed above, these are really "unpled facts" and, under Ninth Circuit precedent and the FRCP's system of notice pleading, they can be considered in support of Plaintiff's § 727(a)(2)(A) claim.

---

[25] Testimony, 9/21/10, 173: 8, 19.

[26] Gosnell adversary, exhibit 3, doc. 9-1, p. 1 lists as an asset "loans from Atlas Holdings Group, Inc." in the amount of $837,000.

The Plaintiff asserts that it has put on a prima facie case as to other categories of assets that were not disclosed.[27]  For convenience, they are grouped by issue raised (omitted, undervalued, valued as "unknown," placed on the wrong schedule, and wrongly described).

One defense that runs through several of the items is the testimony by Weingarten that she omitted them or scheduled them in a certain way "on advice of counsel."[28]  Good faith reliance on advise of counsel justifies failure to properly schedule assets and liabilities for §727(a)(2) purposes.  <u>Adeeb</u>, 787 F.2d at 1343 (but holding that good faith was lacking); <u>see</u> <u>United States Trustee v. Arnold (In re Arnold)</u>, 369 B.R. 266 (Bankr. W.D. Va. 2007)  (no intent under §727(a)(2):  debtor's "unknown" and $1 value of trust holding real estate worth $20,000 was on advise of counsel).  It is the Debtor's burden to show that she had a good faith reliance on advice of counsel.  It is not the responsibility of the Plaintiff to prove otherwise as part of its case-in-chief merely because the Debtor so states.

A.  <u>ITEMS OMITTED FROM THE SCHEDULES</u>

*In each case, the defense relies on Defendant's testimony to rebut Plaintiff. Given the Court's reservations about Defendant's credibility, these omissions each remain at issue in this proceeding and it is up to Defendant to present evidence as noted in each.*

(1) <u>Astra Fund Distributors Corporation</u> was not listed in the schedules, but was

---

[27] Gosnell adversary, doc. 98 lists thirteen categories, but the one concerning the transfer of the notes is dealt with separately above.  Beyond those twelve items, there are another four that are discussed in other motions in this case and are included in this memorandum. They are Colony Capital II, Astra Fund Distributors Corporation, Vectra Bank Account in Aspen, and Wargundy.

[28] This came up in testimony on the following items: Atlas Holdings Group, beneficial interest in the QPRT, the Pointe II lawsuit, and failure to list secured creditors.

in her tax returns.  Weingarten testified that this is a small mutual fund that remained

after the sale of the rest of the assets of Pilgrim.  It ceased to exist in 1996, but there

were "remaining dribbles of tax returns for several years." It was subsumed under Atlas

Holdings Group. Since it had no assets or liabilities, it was not in the bankruptcy

schedules.[29]

*Plaintiff has presented Defendant's testimony that this asset existed. (Plaintiff's*

*counsel refers to the 2000 and 2002 tax returns in cross examining Defendant[30], but*

*these tax returns do not appear to be in evidence.) Defendant has presented testimony*

*that this asset no longer existed.  Defendant should present documentary evidence in*

*support of her testimony.*

(2) <u>Atlas Holdings Group</u> may have been two separate companies, but

only one was listed on the schedules.  Weingarten testified that at some point the name

was changed, but Atlas Holdings Group, a Delaware corporation, and California Atlas

Holdings, Inc. were the same corporation.  Mr. Vivoli then made a statement that they

had two separate taxpayer ID numbers, which Weingarten did not dispute, but stated

that she does not know why they were set up that way, but it was on advice of

counsel.[31]

*Plaintiff has presented Defendant's testimony of two differently named*

*corporations, while Defendant has presented testimony that one corporation was merely*

*a continuation of the other.  Defendant should present documentary evidence in support*

*of her testimony.*

(3) <u>Colony Capital II</u> is not on schedule D.  Weingarten testified that it was either

---

[29] Transcript, 9/21/10, 49:22-50:22.
[30] <u>Id.</u>
[31] Transcript, 9/21/10, 21:2-22:18.

in wind-down or she was notified that it was worthless.  But she testified that it was in her schedule of financial affairs.[32]

*The Court has reviewed the statement of financial affairs and cannot find any reference to Colony Capital II.  If it is revealed in her schedules or statement of financial affairs, the Court will determine that it is no longer an issue in this case.  Defendant's counsel will have 14 days after entry of the order on this memorandum to provide information showing where it is listed or this will remain an issue in the case, and Defendant should present documentary evidence supporting her testimony that it was in win- down or worthless.*

(4) <u>Hidden Canyon Ranch</u>  - Weingarten's interest in this entity is not listed on Schedule B.  Weingarten testified that this company was dissolved before the bankruptcy and she had no interest in it at the time of filing.[33]  There is no evidence to contravene her statement.

*Again, Plaintiff has presented Defendant's testimony that she had an interest in this entity, while Defendant has presented testimony that it no longer existed at filing. Defendant should present documentary evidence in support of her testimony.*

(5) <u>The Pointe II lawsuit</u> is not listed in schedule F and only the Pointe I judgment is listed and thus the Debtor omitted this asset.[34]  Weingarten testified that she relied on her attorney to fill out these schedules.[35]

*As noted in the preceding section, a debtor who relies in good faith on the advice of counsel lacks the intent required to deny discharge. It is now up to Defendant to present evidence of her good faith reliance.*

---

[32] Transcript, 9/21/10, 147:24-149:20,
[33] Transcript, 9/21/10, 27:23-28:12.
[34] Trial exhibit 3.
[35] Transcript, 9/21/10, 62:16-63:15.

(6) <u>Vectra Bank Account in Aspen</u> had $26,000, but was not on schedule B.  This account shows up on her May 2004 financial statement.  She testified that the account ceased to exist in 2003 or maybe in 2004 and that the money was either transferred to her Bank of America account or spent.[36]

*Plaintiff relies on the financial statement that the account existed in 2004 (six months before the bankruptcy was filed), as well as Defendant's testimony that it existed.  Defendant has presented testimony that the account was closed prior to the petition date.  Defendant should present documentary evidence in support of her testimony.*

(7) <u>Wargundy is not listed in the schedules</u> although she admits that she had a 10 percent interest in it.  In April 2003, she sent an email to her accountant that Wargundy has not been funded, but is owned 90 percent by her husband and 10 percent by her and that they expect to fund it sometime in 2003.[37]  She testified that she thinks that she and her husband agreed that he would be the sole funder of Wargundy and she would fund Excelsior, which she did out of her own general funds.[38]

*Plaintiff relies on the e-mail and Defendant's testimony that she would own 10% of Wargundy., while Defendant relies on her testimony that she and her husband changed the arrangement and he became the sole owner and funder of Wargundy. Her claimed 100 percent ownership of Excelsior supports her contention that she had no interest in Wargundy and her husband had no interest in Excelsior, but there are no documents to back up the change that she testified to.  It is now up to Defendant to provide documentary evidence of this change.*

---

[36] Transcript, 9/21/10, 51:20-52:15; Trial exhibit 36.
[37] Trial exhibit 35.
[38] Transcript, 9/21/10, 86:4-89:7.

(8) <u>Whitehall Global Life and Whitehall Life</u> are not listed in the schedules.
Weingarten testified that the Whitehall companies were owned and controlled by Veritas
(in which she had and disclosed an ownership interest) and subsumed into it.[39]

*Again, the evidence of both these related entities' existence and the reasons why
they need not be disclosed on the schedules is entirely from Ms. Weingarten's
testimony.   She should produce documentary evidence to support her statement.*

(9) <u>Bank of America mortgage on Malibu House</u>   Defendant testified that the
home mortgage through Bank of America was still in her name (i.e., had not been
revised to reflect the transfer to the QPERT), but states that she did not put it down on
advice of counsel.[40]

*As noted above, it is up to Defendant to present evidence of her good faith in
relying on advice of counsel in omitting the Bank of America mortgage from the
schedules.*

B. <u>ASSETS THAT WERE UNDERVALUED ON THE SCHEDULES</u>

<u>(1) Canyon Partners, LLC (aka Canyon Value Realization Fund LP)</u> was
undervalued.  On September 30, 2004, the day before the bankruptcy was filed, it had
an estimated capital value of $423,661.  At some point prior to that date, but in 2004,
she had withdrawn $1,168,000 from the account.[41]  In schedule B she valued it at
$400,000.[42]

*The undervaluation of this account is only about 5%.  Almost all of the values in
schedule B are even amounts and there is no showing that this was an attempt to hide*

---

[39] Transcript, 9/21/10, 131:17-133:14.
[40] Transcript, 9/21/10, 59:1-23.
[41] Trial exhibit 79.
[42] Trial exhibit 3.

*the asset or its value from the Trustee or from the creditors.  This de minimis*

*undervaluation alone does not evidence the requisite intent under §727(a)(2).  This*

*issue will no longer be considered in this proceeding, except as a part of the Court's*

*general picture of Debtor's schedules and transactions in ruling on the issues*

*remaining.  The Defendant does not need to submit additional evidence on this issue.*

(2) Jewelry, Art, and Antiques were not completely listed.  The only item that she

listed in schedule B is an Edward Veneau painting valued at $225,000.  She also listed

her jewelry at $350,000, but it was insured at an appraised value of $625,000.[43]  In her

2002 financial statement, she valued the jewelry, art and antiques at $1 million.[44]  The

only other evidence on this issue is Weingarten's testimony that there were no other

antiques except the painting and that she used the appraised value for her insurance

policy,

*Plaintiff has provided sufficient evidence that not all jewelry was disclosed in that*

*there is a discrepancy of $275,000 between the listed value of the jewelry and its*

*appraised value.  As to the antiques and artwork, if the jewelry was worth the insured*

*amount of $625,000 and the painting was worth the $225,000, this is very close to the*

*$1 million estimate on the 2002 financial statement.  This undervaluation remains an*

*issue as the jewelry, art, and antiques are linked by the evidence  It is up to the*

*Defendant to present evidence as to why this undervaluation does not demonstrate an*

*intent to conceal assets .*


C.  ASSETS LISTED WITH A VALUE STATED AS "UNKNOWN"

Courts have ruled in various ways on assets scheduled as having an "unknown"

---

[43] Transcript, 9/21/10, 30:5-32:8. Trial exhibit 3.
[44] Trial exhibit 38.

value.  Some have held that it does not demonstrate an intent to hinder, defraud or

delay, because the property is listed and the trustee and creditors can investigate

further.  Tranche 1 (SVP-AMC), Inc. v. Relito Tan (In re Relito Tan), 350 B.R. 488

(Bankr. N.D. Cal. 2006).  Other courts have considered the debtor's justification for use

of "unknown."   See Parnes, 200 B.R. at 715-16 (no intent: court accepted debtor's

testimony that he did not know how to value dental practices); see also Arnold), 369

B.R. 266 at 271 (Bankr. W.D. Va. 2007)  (no intent: although trust had real estate worth

$20,000, debtor – on advice of counsel -- did not know how to value her interest in

trust).  Others have looked at different issues in the schedules and made a finding of

intent, but only as part of a pattern of hidden assets.  In re Ligon, 55 B.R. 250, 253

(Bankr. M.D. Tenn. 1985) (intent: debtor "never had any trouble valuing his stock in

BEEL Corporation in the past" and other facts show a "pattern of omissions and actions

which overwhelmingly demonstrate debtor's intent to hinder, delay and defraud

creditors.");  Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver), 367 B.R. 795, 815 (Bankr.

D.N.M. 2007)(intent under §727(a)(4): "unknown" valuation of interest in Platinum

Group, LLC, taken together with undisclosed transfers to that entity "had the effect of a

lie.").

       The following assets were scheduled with an "unknown" value:

       (1) Beneficial interest in the QPRT  The res of the QPRT is the Malibu home of

the Debtor and her husband.  In response, Weingarten testified that she was aware of

the appraised value due to an appraisal that she obtained six months before filing, but

that she did not put down a value on instructions of counsel.[45]

       (2) Veritas Holdings I, LP  Although she valued it in various financial statements

---

[45] Transcript, 9/21/10, 32:9-33:18.

for the period of 1999 to 2000 (and in a 2002 memorandum), it is not listed in the financial statement prepared immediately before filing this bankruptcy case.[46] Weingarten testified that Veritas is like a hedge fund in that you don't know at any given moment what it is worth.[47]  In Schedule B she noted that it was in liquidation.[48]

Weingarten's testimony as to Veritas is as follows: She received income from Veritas over the years and she told the Trustee that she expected a sizable payment in the future.  Her husband was the chairman of the supervisory board of Veritas and although she might have asked her husband for the value, it was unknown to him at that time.  She never asked him for any documents evidencing value.[49]  She has provided Trustee with information on post-petition distributions that she has received from Veritas.  She has supplied the Trustee and the Examiner with a Veritas folder, but she does not recall what documents were in it or how thick it was.[50]

(3)  Atlas Holdings Group Inc.  Defendant had a 97% interest in this entity, which had a net worth of $8 million ten months prior to the petition date (on 12/31/03).[51]

*I find the reasoning of Relito Tan (which is the only decision from the Ninth Circuit) persuasive.  By listing the asset, even one with an unknown value, Defendant has put parties on notice these assets and they can investigate further.  Thus, an "unknown" valuation does not show an intent to hinder, delay or defraud under §727(a)(2).  These issues will no longer be considered in this proceeding, except as a part of the Court's general picture of Debtor's schedules and transactions in ruling on*

---

[46] Trial Exhibit 39 – 1999 financial statement values it at $1 million; Trial Exhibit 41 – 2000 financial statement values it at an illegible amount; Trial Exhibit 38 – 2002 financial statement does not list Veritas, but Trial Exhibit 43, which is a 2002 memorandum values it at $2.5 million; Trial Exhibit 36 – 2004 financial statement does not list Veritas.
[47] Transcript, 9/21/10, 132:2-5.
[48] Trial Exhibit 3.
[49] Transcript, 9/21/10, 34:7-36:16.
[50] Transcript, 9/21/10, 38:11-42:12.
[51] Transcript, 9/21/10: 173: 5-9.

1
2

*the issues remaining. Defendant need not submit additional evidence on these issues.*

3

### D. ASSET & LIEN LISTED IN THE WRONG PLACES

4
5
6

Some courts have found that intent to hinder, delay or defraud cannot be inferred

where the asset is fully disclosed, though on the wrong place in the bankruptcy

7

schedules.  See Parnes v. Parnes (In re Parnes), 200 B.R. 710 (Bankr. N.D. Ga.

8

1996)(disclosing partnerships fully in Schedules B and I, but making an incomplete

9

response on Statement of Financial Affairs does not show intent to conceal) and In re

10
11

Hirengen, 112 B.R. 382, 384 (Bankr. D. Mont. 1989) (no intent where "numerous of the

Bank's allegations are based on the Debtors' listing of transactions or property in one

12
13

Schedule, Statement, or Petition and not in another corresponding Schedule,

Statement, or Petition"); see also  Quicken Loans, Inc. v. Splawn (In re Splawn),  376

14
15

B.R. 747 (Bankr. D.N.M. 2007)(no intentional fraud under 727(a)(4) where defendants

16

did not disclose agency agreements in original schedules, but did report income from

17
18

agreements on Schedule I,  and later amended Schedule G to include agreements).

Two items were disclosed, but in the wrong part of the schedules:

19
20

 (1) BR Colony Partners I LP is not listed on Schedule B.[52]  But the Court can

21

take judicial notice that Weingarten's statement of financial affairs shows investment

22

income received from this entity in 2002 and 2003.[53]  It is clear from the statement of

23
24

financial affairs that in 2002 and 2003 she had an "ownership" interest, in that this was

labeled as investment income.

25
26

(2) Abstract of judgment recorded by Pointe San Diego (Plaintiff) is not listed on

27

schedule D.  But she did list the abstract of judgment in the statement of financial

28

---

[52] Transcript, 9/21/10, 28:15-29:14.
[53] Trial Exhibit 4, p. 1.

affairs.[54]

*I agree with these decisions holding that disclosure in wrong part of the statements and schedules does not show intent to hinder, delay or defraud creditors. The issue before the Court is whether Weingarten hid assets and failed to disclose them to the Court and the Trustee.  It is not whether she wrote them on the proper form. Anyone paying careful attention to the Debtor's schedules and statement would have been given notice of her interest in BR Colony I Partners, LP and the existence of the abstract of judgment.  Accordingly, I cannot conclude she was attempting to hide that asset or that liability.  These issues will no longer be considered in this proceeding, except as a part of the Court's general picture of Debtor's schedules and transactions in ruling on the issues remaining.  Defendant need not present additional evidence on these issues.*

## E.  ASSET WRONGLY DESCRIBED

Excelsior LLC is only listed on schedule B as a separate property trust and not as Excelsior. The testimony can be summarized as follows:  Weingarten asserted that although Excelsior was an LLC, it was part of her separate property trust and it had a brokerage account.  However her financial statement that was signed on May 24, 2004 shortly before the bankruptcy case was filed, lists Excelsior as an account and it is specifically excluded as a trust.[55]  Excelsior had an account with Morgan Stanley.  The account statement for Excelsior as of September 30, 2004, which is the day before she filed her bankruptcy petition, shows the value of the Excelsior, LLC brokerage account to be $290,745.84.  It also shows that there was a $144,000 withdrawal from the

---

[54] Trial exhibit 4, ¶10.
[55] Trial Exhibit 36; transcript, 9/21/10, 43:13-54:8.

account on September 27, 2004 that was wired to California Atlas Holdings.[56] Weingarten's schedule B states that the total value of the separate property trust was $285,000, though the value of just the Excelsior LLC account was over $290,000. And the $144,000 withdrawal is not indicated on her schedules.

In response, Weingarten testified that although Excelsior and BP are broken out separately in the financial statement that she gave her bank and not in the bankruptcy schedules, this was done on advice of counsel.[57]

*No one has pointed out evidence as to what other property was part of the separate property trust. If the only asset in that trust was the Excelsior ownership interest, it is possible that this was sufficient disclosure and that the value was sufficiently accurate. If, however, there were other assets, this seems to be improper scheduling. Further, there is evidence that Excelsior was not in a trust. The Plaintiff has met its burden as to Excelsior.*

*It is now up to Weingarten to offer documentary or other evidence as to the status and assets of both Excelsior and of the separate property trust and her good faith in relying on advice of counsel.*

III. <u>CONCLUSION</u>

Defendant now admits that the transfer of Defendant's Malibu residence to a QPERT is not actionable under 727(a)(2). This matter is no longer an issue in this case.

As noted above, there a quite a few issues where the Debtor should put forth documentary or other evidence to support her statements. At this time the case is not

---

[56] Trial Exhibit 83.
[57] Transcript, 9/21/10, 49:9-21.

ripe for me to grant this motion for judgment on partial findings as to the claim for relief under §727(a)(2), although some contentions of the Plaintiff will no longer be considered.

I will deny Defendant's motion because there are some transactions that could evidence the requisite intent under §727(a)(2)(A)[58] and the Defendant needs to provide documentary back up, evidence of good faith, etc., as detailed above.

###

Date: January 25, 2013

Geraldine Mund
United States Bankruptcy Judge

---

[58] Some of these transactions (such the large undervaluation of artwork and jewelry) might alone evidence an intent to hinder, delay or defraud creditors, while others might do so only as part of the larger picture.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): _ **MEMORANDUM OF OPINION REGARDING DEFENDANT'S MOTION TO RECONSIDER THE DENIAL OF THE MOTION FOR JUDGMENT ON PARTIAL FINDINGS AS TO 11 U.S.C. §727(a)(2)**
_____
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Richard Berger: rberger@lgbfirm.com
Jeffrey Cawdrey jcawdrey@gordonrees.com
Joseph Eisenberg jae@jmbm.com
John Reitman jreitman@lgbfirm.com
George Schulman gschulmna@dgdk.com
John Tedford jtedford@dgdk.com
Richard Lee Wynne rwynne@kirkland.com
Aleksandra Zinonjic azimonjic@lgbfirm.com
Maurguax Ross margaux.ross@usdoj.gov
Thomas Geher tmg@jmbm.com
Michael Vivoli mvivoli@vivolilaw.com
David Gill dagill@dgdk.com

☐  Service information continued on attached page

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐  Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                          **F 9021-1.1.NOTICE.ENTERED.ORDER**

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1.NOTICE.ENTERED.ORDER**